Mary Ann C. Marlowe  ( MM-0723)
KEANE & MARLOWE, LLP
Attorneys for Defendants
INDEPENDENT CONTAINER LINE, LTD
197 Route 18 South, Suite 3000
East Brunswick, N.J. 08816
(732) 951-8300

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
HANSA MEYER GLOBAL TRANSPORT
GmbH & Co. KG,                                                                08 Civil 01028 (HB)

                Plaintiff,                             **ANSWER AND CROSSCLAIM**

-against-

INDEPENDENT CONTAINER LINE LTD; ICL;
EXACTA INTERNATIONAL INC.; SWIFT
TRANSPORTATION CO. INC.,

                Defendants.
---------------------------------------------------------------x

      Defendant, INDEPENDENT CONTAINER LINE LTD., (hereinafter "ICL"), by and through its attorneys, Keane & Marlowe, LLP, as and for its Answer to the Complaint of Plaintiff, Hansa Meyer Global Transport Gmbh & Co. KG (hereinafter "Hansa") states the following upon information and belief:

**FIRST CAUSE OF ACTION**

      1.    ICL denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "1" of Plaintiff's Complaint, except admits that this is an admiralty and maritime claim within the meaning of FRCP 9(h).

      2.    ICL denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "2" of Plaintiff's Complaint.

3. ICL denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "3" of Plaintiff's Complaint, except admits that it is a corporation organized under the laws of the Bahamas and maintains its principle place of business in Richmond, Virginia. To the extent that the allegations set forth against other defendants are construed to impose liability on ICL, those allegations are denied.

4. ICL denies knowledge and information sufficient to form a belief as to the truth of the allegations set forth in paragraph "4" of Plaintiff's Complaint, except admits that it is a common carrier. To the extent that the allegations set forth against other defendants are construed to impose liability on ICL, those allegations are denied.

5. Upon information and belief, ICL admits that there was a shipping container (no. ICUU4963014) said to contain "siding and table tops" which was loaded and sealed (no. 0360) by Werzalit of America in Bradford, PA for transport to Werzalit AG & Co. in Oberstenfeld, Germany aboard the INDEPENDNET PURSUIT v. 044 pursuant to booking no. 0044CA091360; except as so specifically admitted, defendant denies knowledge and information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph "5" of Plaintiff's Complaint. To the extent that the allegations set forth against other defendants are construed to impose liability on ICL, those allegations are denied.

6. Plaintiff's Complaint does not contain a paragraph "6."

7. ICL denies each and every allegation against ICL contained in paragraph "7 of Plaintiff's Complaint. To the extent that the allegations set forth against other defendants are construed to impose liability on ICL, those allegations are denied.

8. ICL denies each and every allegation against ICL contained in paragraph "8" of Plaintiff's Complaint. To the extent that the allegations set forth against other defendants are construed to impose liability on ICL, those allegations are denied.

9. ICL denies each and every allegation against ICL contained in paragraph "9" of Plaintiff's Complaint. To the extent that the allegations set forth against other defendants are construed to impose liability on ICL, those allegations are denied.

10. ICL denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "10" of Plaintiff's Complaint.

**SECOND CAUSE OF ACTION**

11. ICL repeats and realleges each and every denial and denial of knowledge or information contained in paragraphs 1-10 of this Answer as if fully set forth herein at length.

12. ICL denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of Plaintiff's Complaint, except admits that this action involves a shipment of cargo. To the extent that the allegations set forth against other defendants are construed to impose liability on ICL, those allegations are denied.

13. ICL denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of Plaintiff's Complaint. To the extent that the allegations set forth against other defendants are construed to impose liability on ICL, those allegations are denied.

14. ICL denies each and every allegation against ICL contained in paragraph "14" of Plaintiff's Complaint. To the extent that the allegations set forth against other defendants are construed to impose liability on ICL, those allegations are denied.

**THIRD CAUSE OF ACTION**

15.   ICL repeats and realleges each and every denial and denial of knowledge or information contained in paragraphs 1-14 of this Answer as if fully set forth herein at length.

16.   ICL denies each and every allegation against ICL contained in paragraph "16" of Plaintiff's Complaint.  To the extent that the allegations set forth against other defendants are construed to impose liability on ICL, those allegations are denied.

**AFFIRMATIVE DEFENSES**

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE**

17.   Plaintiff fails to state a cause of action against ICL upon which relief can be granted.

18.   The said shipment as described in Plaintiff's Complaint is subject to all the terms, conditions and exceptions contained in certain bills of lading, by which the shippers and consignees of said bills of lading and terms of service agree to be and are bound.

19.   Said shipment was to be transported on an ocean vessel as identified on the respective dock receipt with booking no. 0044CA091360 subject to the contractual terms and conditions of the aforesaid bills of lading.

20.   Any shortage, loss and/or damage to the shipment in suit, to the extent that any was that sustained, was due to causes for which ICL is not liable or responsible by virtue of the provisions of the Interchange Agreement dated July 6, 2006 entered into between ICL and Swift Transportation Co., Inc. (copy annexed hereto as Exhibit "1") and/or the Carriage of Goods by Sea Act approved April 16, 1936, and/or Harter Act, and/or the provisions of the said bills of lading and/or the General Maritime Law and/or applicable foreign law.

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE**

21.     Plaintiff has failed to properly and fully mitigate the damages alleged in its Complaint.

**AS AND FOR A THIRD AFFIRMATIVE DEFENSE**

22.     If any loss or damage did occur to said cargo, none of said loss or damage was caused or contributed to by any fault or neglect on the part of ICL but from a cause or causes from which it is expressly exempted from the responsibility by the terms and conditions of the aforesaid Interchange Agreement and bill(s) of lading covering the carriage.  ICL claims the benefit of each and every provision contained in said Agreement, bills of lading and applicable tariffs, including the jurisdiction and limitation of liability provisions, and begs leave to amend this answer and to offer proof thereof when more fully advised of the details concerning said damage.

**AS AND FOR A FOURTH AFFIRMATIVE DEFENSE**

23.     Upon information of belief, the venue of this matter is improperly placed in this District.

**AS AND FOR A FIFTH AFFIRMATIVE DEFENSE**

24.     ICL did not itself at any time enter into any contract or other agreement with plaintiff herein and is, therefore, not in any respect obligated to the Plaintiff.

**AS AND FOR A SIXTH AFFIRMATIVE DEFENSE**

25.     ICL liability, if any, is limited to a $500 per package or customary freight unit pursuant to the Carriage of Goods by Sea Act (COGSA) approved April 16, 1936, and the terms of the applicable bill(s) of lading.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

26.     If the cargo was damaged, it was not damaged while in the care, custody or control of ICL and/or its agents, employees or representatives.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

27.     To the extent that the Carriage of Goods by Sea Act is inapplicable, then any recovery to which Plaintiff may be deemed entitled to is limited pursuant to 49 U.S.C. § 14706.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

28.     In the event that liability is established, and to the extent that the Carriage of Goods by Sea Act is inapplicable, the measure of damages to which Plaintiff is entitled to recover is strictly limited pursuant to the terms and conditions set forth in the applicable bill of lading and ICL's tariff provisions in effect at the time of the subject transport, pursuant to 49 U.S.C. § 14706 of the Interstate Commerce Act.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

29.     Punitive or exemplary damages are not recoverable against ICL in this cause under the Carriage of Goods by Sea Act, the Carmack Amendment to the Interstate Commerce Act or any other law.

### AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

30.     ICL is not liable for any pre-existing damage to any of said goods or damage resulting from the inherent vice of the cargo.

### AS AND FOR A TWELTH AFFIRMATIVE DEFENSE

31.     ICL is not liable for alleged loss or damage sustained while the cargo was in the care, custody and control of third parties.

**AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE**

32. ICL is not liable for alleged loss or damage to property that was neither tendered to it for transportation, nor was in ICL's care, custody or control.

**AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE**

33. This suit should be dismissed, or in the alternative, transferred on the basis of *forum non conveniens* and improper venue.

**AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE**

34. Plaintiff is not entitled to the relief sought herein.

**AS AND FOR A SIXTEENTH AFFIRMATIVE DEFENSE**

35. Upon information and belief, this action is time barred.

**AS AND FOR AN SEVENTEENTH AFFIRMATIVE DEFENSE**

36. Defendant, ICL, asserts the defenses of laches and waiver.

**AS AND FOR A EIGHTEENTH AFFIRMATIVE DEFENSE**

37. If plaintiff's cargo was damaged in any respect, such damage was caused, in whole or in part, the contributory negligence of plaintiff or its agent.

**AS AND FOR A NINETEENTH AFFIRMATIVE DEFENSE**

38. Any loss, shortage or damage to the aforementioned shipment was caused by the act or omission of the shipper of the goods or its agents or representatives and, accordingly, ICL is not liable therefore.

**AS AND FOR A TWENTIETH AFFIRMATIVE DEFENSE**

39. Plaintiff has failed to name a necessary party.

### AS AND FOR A TWENTY-FIRST AFFIRMATIVE DEFENSE

40. Plaintiff has failed to properly and fully mitigate the damages alleged in its Complaint.

### AS AND FOR A TWENTY-SECOND AFFIRMATIVE DEFENSE

41. Plaintiff is not a real party in interest with regard to the shipment in suit and therefore has no standing to bring this action.

### AS AND FOR A TWENTY-THIRD AFFIRMATIVE DEFENSE

42. Plaintiff has suffered no loss or damage for which it is entitled to recover.

### AS AND FOR A TWENTY-FOURTH AFFIRMATIVE DEFENSE

43. ICL reserves its right to add additional affirmative defenses that may arise during the discovery process.

**WHEREFORE,** ICL demands Judgment dismissing the Complaint with prejudice; declaring that ICL has no obligation with respect to any claims or parties included in the subject matter of or arising out of the within litigation or any other claims; awarding ICL costs and attorneys' fees incurred in this action to the full extent allowed by law; and awarding ICL such other and further relief as this Court deems just and proper.

## CROSS-CLAIM FOR IDEMNIFICATION AGAINST DEFENDANT SWIFT

44. ICL repeats and realleges each and every denial and denial of knowledge or information contained in paragraphs 1-44 of this Answer as if fully set forth herein at length.

45. If there was any loss or damage to the shipment referred to in the Complaint, and if said loss or damage causes any liability to be imposed upon ICL, then said liability was the fault and is the responsibility of Defendant Swift Transportation Co., Inc. as a result of its negligence, breach of contract, and/or breach of warranties, implied or expressed.

46. While not admitting any liability herein, if it is determined that ICL is at fault and liable to Plaintiff in this matter, such fault was vicarious, passive and secondary in that the conduct of defendant Swift was the active, primary and proximate cause of Plaintiff's damages. ICL therefore demands indemnification and/or contribution from Co-Defendant Swift Transportation for the amount of any Judgment rendered against ICL, including reasonable counsel fees and expenses.

**WHEREFORE,** ICL demands Judgment dismissing the Complaint against it with prejudice; granting its cross-claims, declaring that ICL has no obligation with respect to any claims or parties included the Complaint or arising out of the within litigation or any other claims; awarding ICL costs and attorneys' fees incurred in this action to the full extent allowed by law; and awarding ICL such other and further relief as this Court deems just and proper.

Dated: New York, New York
       April 14, 2008

                                    Respectfully submitted,

                                    **KEANE & MARLOWE, LLP**

                    By:    S/ Mary Ann C. Marlowe_____
                           Mary Ann C. Marlowe (MM-0723)

        Attorneys for Defendant
        INDEPENDENT CONTAINER LINE LTD.
        197 Route 18 South, Suite 3000
        East Brunswick, N.J. 08816
        (732) 951-8300

        300 Park Avenue – 17th Floor
        New York, New York 10022
        (212) 572-6210

## **CERTIFICATE OF SERVICE**

I, Mary Ann C. Marlowe, hereby certify that I electronically filed the ANSWER and Rule 7.1 Statement on behalf of Defendant, Independent Container Line Ltd., with the Clerk of the Court by mail and by using the CM/ECF system which will send notification of such filing(s) electronically to the following:

    David Mazaroli, Esq.
    11 Park Place, Suite 1214
    New York, New York 1007

    Stephen Vangrow, Esq.
    Cichanowicz, Callan, Keane Vengrow & Textor, LLP
    61 Broadway, Suite 3000
    New York, New York 10006

    Gregory S. Katz, Esq.
    Wilson, Elser, Moskowitz, Edelman and Dicker, LLP
    150 East 42nd Street
    New York, New York 10017

Dated: April 14, 2008

                                                S/ Mary Ann C. Marlowe
                                                Mary Ann C. Marlowe (MM-0723)

# INDEPENDENT CONTAINER LINE, LTD.
# INTERCHANGE AGREEMENT

This agreement is between Independent Container Line, Ltd., a Federal Maritime Commission licensed international transportation company (hereinafter "ICL") having its principal place of business at 4801 Audubon Drive, Richmond, VA 23231 and the CARRIER identified on page 4, licensed by the Surface Transportation Board or Federal Aviation Agency (hereinafter "Carrier").

ICL owns and/or leases containers, chassis, trailers and other Equipment in support of its North American transport operations which the Carrier will interchange to deliver, return or otherwise transport ICL freight, (goods) as well as empty containers and chassis for on hire or termination purposes.

1. DEFINITIONS:

(a). Equipment means containers, chassis, trailers and other items used in support of ICL North American operations and their respective components which shall fully comply with Federal Motor Carrier Safety Regulations.

(b). EIR/TIR are respective terms for Equipment Interchange Reports and Trailer Interchange Reports generated in conjunction with the "receiving from" or "delivering to" Carriers the Equipment identified in (a) above.

(c). A "Day" shall be a 24 hour period ending at 12:00 midnight or any part thereof.

(d). An "Interchange" shall mean the delivery or receipt of Equipment identified in item (a), between ICL and the Carrier or a Subsequent User as authorized by ICL.

(e). The "Use Period" with respect to Equipment identified in (a) above shall be the period between time and date of receipt by the Carrier or any Subsequent User and the time and date the equipment is returned to ICL or ICL's agent.

(f). A "Subsequent User" shall mean any person or entity other than the Carrier which interchanged the Equipment from the Carrier. "Subsequent User" shall include, without limitation, any shipper, consignee, other motor carrier, or agent thereof, having possession of or using the Equipment whether or not such possession and/or use has been consented to by ICL. It is expressly understood and agreed that possession or use of Equipment by any Subsequent User, whether or not the same has been consented to by ICL shall be deemed the possession or use of Equipment by the Carrier.

2. PLACE OF INTERCHANGE AND RETURN:

(a). Equipment shall be returned to the same place at which it was interchanged or to such other location acceptable to ICL.

(b). If, for Carrier convenience, ICL provides equipment at an inland pool the Carrier shall return a like piece of equipment to that pool.

3. TIR's/EIR's:

(a). TIR/EIR's will be executed for equipment as delivered to a Carrier or when received from a Carrier. The appropriate TIR/EIR shall be used to determine the use period and calculate charges due. Additionally, the document will be used as support for billing damages sustained by Equipment while in Carrier possession.

(b). ICL makes no representations or warranties, express or implied, as to the condition of the Equipment or its fitness for any particular use or purpose. By its execution of the TIR or EIR, the Carrier assumes all risks associated with or arising from its' and any Subsequent Users possession and/or use of the Equipment.

4. USE OF EQUIPMENT BY CARRIER:

(a) The Carrier, at all times during the Use Period, shall retain possession of the Equipment and shall not permit the same to be held or used by any other person or entity except as specified on the EIR or otherwise permitted by ICL in writing. No possession or use of the Equipment by any Subsequent User, whether or not specified in the EAR or otherwise permitted by ICL, shall in any manner excuse or lessen the Carrier's responsibilities set forth in this Interchange Agreement.

(b) The Carrier shall be deemed to have complete possession and control of the Equipment during the Use Period. Neither the Carrier nor any Subsequent User of the Equipment, nor their agents or employees shall, for any purpose, be deemed agents or employees of ICL.

(c) The Carrier does hereby agree to indemnify and hold ICL harmless from and against any and all claims, demands, actions, suits, proceedings, costs, expenses (including reasonable attorney's), damages and liabilities of any nature whatsoever, which in any manner arises out of or is connected with, or results from its possession, use, operation, maintenance and/or return of the Equipment or by any Subsequent user, including, without limitation, any claims, demands, actions, proceedings, costs, expenses (including reasonable attorney's fees), damages and liabilities for the loss of, damage to, or delay affecting the freight (goods) being transported in such equipment at any time during the use period.
In the event of death or serious injury to any person or serious loss or damage to the property of any person or entity including property of any person (including, without limitation, agents or employees of ICL, the Carrier or any Subsequent User) occurring during its possession, use, operations, maintenance or return, the Carrier shall immediately notify the Port Manager from which the equipment was dispatched and at night or weekends, the Equipment/Claims Manager at 804 651-0703. For all less serious incidents said notification must be given within the next business day to the local Port Manager.

(d). The Carrier shall not suffer or permit any lien to be placed upon the Equipment. If Equipment is seized or attached by judicial process, the Carrier shall promptly notify ICL, and shall secure it's release within five (5) days, failing which ICL may (but is not obligated to) secure such release for the Carrier's account.

(e) At all times during the term of the Agreement, the Carrier shall maintain, and provide ICL with insurance certificate showing the following minimum coverage's which shall name ICL as an additional assured.

(1). Public liability, bodily injury and property damage insurance or STB approval for self insurance with limits of not less than $1,000,000 per occurrence.
(2). Cargo liability for loss or damage equal to or greater than the value of the goods being transported.
(3). Trailer interchange coverage.
(4). Workers Compensation and Employers' Liability.
(5). All cargo transport exclusions be shown under Description of Operations. *IF NONE -- SO STATE "NONE".*

(f). A copy of the Carriers most recent DOT safety rating.

## 5. MAINTENANCE AND REPAIRS OF EQUIPMENT:

(a). From the time of receipt, until return, including while in the possession of Subsequent Users the equipment shall be at the risk of the carrier which shall preserve and maintain the equipment at its expense.

(b). In the event the Equipment is damaged during the Use Period the Carrier shall repair same to the prevailing IICL (International Institute of Container Lessors) and or ICL directed standard.

(c). Although ICL makes no warranty or representation, expressed or implied, as to the fitness or condition of the Equipment, Chassis will have a valid FHWA sticker and Containers will have a valid ACEP sticker identifying suitability for international transport. Transport over the U.S. highway system with a chassis and container consistent with domestic transportation and driver responsibility as identified under current Federal regulations shall apply. All wear and tear repairs to Equipment shall be immediately reported to the local M&R manager and a determination made as to whether ICL or Carrier responsibility. All such repairs found to be ICL's responsibility will be given a Purchase Order number. The Carrier shall submit its invoice for the agreed repair costs together with supporting work orders within 10 days of occurrence.

(d). Unless found to be ICL's responsibility under paragraph (c) repairs to tires and tubes while in Carriers possession is the responsibility of the Carrier. Replacement tires purchased to complete a journey will be returned to the Carrier when the Equipment is redelivered to ICL. In the event ICL is required to invoice the Carrier for loss of tires, same will be billed according to tread depth identified on delivered EIR/TIR plus a mount/dismount charge of $19.00. Tread depths of 14/32 or greater will be billed at $172.00 each, mounting included.

## 6. MISSING OR DESTROYED EQUIPMENT:

(a). In the event Equipment is missing, Use Charges will continue for two days after written notice is received by ICL requesting value of the lost equipment.

(b). In the event Equipment becomes a total loss or constructive total loss Use Charges will continue until two days after estimate of repairs have been received by ICL. Within this period, ICL will provide the depreciated value of the equipment, disposition instructions and request billing advice from the Carrier. Payment for losses are required within 30 days of billing by ICL.

## 7. USE CHARGES:

(a) The Carrier shall pay ICL charges on the Equipment as set forth in item d hereof for each elapsed day from the day of receipt to the day of return, Free Days excluded.

(b). Where excess trailer charges are caused by the acts of a shipper or consignee, the appropriate delay, demurrage or storage charges as defined in the Carrier's Tariff are to be billed by the Carrier to the shipper or consignee, but Carrier remains responsible to ICL for any such charges.

(c). Free days are the day of receipt, plus four additional days including the day of return.

(d). Charge days are as follows for container and/or chassis:

| | DAY 6-10 | EACH DAY THEREAFTER |
|---|---|---|
| | $10.00/DAY | $25.00/DAY |

NOTE: Equipment delivering and picking up export cargo will be allowed (5) additional days of free time.

## 3. TIR's/EIR's:

(a). TIR/EIR's will be executed for equipment as delivered to a Carrier or when received from a Carrier. The appropriate TIR/EIR shall be used to determine the use period and calculate charges due. Additionally, the document will be used as support for billing damages sustained by Equipment while in Carrier possession.

(b). ICL makes no representations or warranties, express or implied, as to the condition of the Equipment or its fitness for any particular use or purpose. By its execution of the TIR or EIR, the Carrier assumes all risks associated with or arising from its' and any Subsequent Users possession and/or use of the Equipment.

## 4. USE OF EQUIPMENT BY CARRIER:

(a) The Carrier, at all times during the Use Period, shall retain possession of the Equipment and shall not permit the same to be held or used by any other person or entity except as specified on the EIR or otherwise permitted by ICL in writing. No possession or use of the Equipment by any Subsequent User, whether or not specified in the EAR or otherwise permitted by ICL, shall in any manner excuse or lessen the Carrier's responsibilities set forth in this Interchange Agreement.

(b) The Carrier shall be deemed to have complete possession and control of the Equipment during the Use Period. Neither the Carrier nor any Subsequent User of the Equipment, nor their agents or employees shall, for any purpose, be deemed agents or employees of ICL.

(c) The Carrier does hereby agree to indemnify and hold ICL harmless from and against any and all claims, demands, actions, suits, proceedings, costs, expenses (including reasonable attorney's), damages and liabilities of any nature whatsoever, which in any manner arises out of or is connected with, or results from its possession, use, operation, maintenance and/or return of the Equipment or by any Subsequent user, including, without limitation, any claims, demands, actions, proceedings, costs, expenses (including reasonable attorney's fees), damages and liabilities for the loss of, damage to, or delay affecting the freight (goods) being transported in such equipment at any time during the use period.

**However, Carrier's obligation to indemnify and hold ICL harmless shall not extend to nor include events which are the result of any wrongful act or omission by ICL, its employees, agents, other subcontractors, and/or Subsequent User nor the employees, agents, and sub-contractors of a Subsequent User.**

In the event of death or serious injury to any person or serious loss or damage to the property of any person or entity including property of any person (including, without limitation, agents or employees of ICL, the Carrier or any Subsequent User) occurring during its possession, use, operations, maintenance or return, the Carrier shall immediately notify the Port Manager from which the equipment was dispatched and at night or weekends, the Equipment/Claim Manager at 804 651-0703. For all less serious incidents said notification must be given within the next business day to the local Port Manager.

(d). The Carrier shall not suffer or permit any lien to be placed upon the Equipment. If Equipment is seized or attached by judicial process, the Carrier shall promptly notify ICL, and shall secure it's release within five (5) days, failing which ICL may (but is not obligated to) secure such release for the Carrier's account.

## 8. NOTICES:
All notices required or permitted hereunder shall be in writing and sent by fax, registered or certified mail, telegram or cable addressed to the party sought to be charged therewith at its address listed in this Interchange Agreement.

## 9. GOVERNING LAW:
This agreement shall be governed by and construed in accordance with the laws of the State of Virginia.

## 10. ENTIRE AGREEMENT:
This agreement together with any EIR or TIR issued hereunder constitute the entire agreement between the parties and the same may not be changed, modified, amended or canceled except in writing signed by both parties. This agreement may not be assigned by the Carrier without the written consent of ICL.

## 11. CONFIDENTIALITY:
ICL and Swift Transportation agree to maintain the terms and conditions of this Agreement confidential, and each party agrees not to disclose any term or condition to third persons without the written consent of the other party.

The parties also agree not to disclose to third persons any information or documents received, exchanged or made available by either party during the negotiation of this agreement.

## 12. BINDING EFFECT:
This agreement shall take effect and become binding upon all parties and their respective heirs, successors and assigns this  6th  day of  July  2006.

| Swift Transportation | INDEPENDENT CONTAINER LINE, LTD. |
|---|---|
| NAME OF CARRIER | |
| [signature] VP Sales | [signature] John E. Gillies |
| (SIGNATURE AND TITLE) | (EQUIPMENT OPERATIONS) |
| 2500 S 75th St. | 4801 AUDUBON DRIVE |
| (ADDRESS) | (ADDRESS) |
| Phoenix 82 | RICHMOND, VA 23231 |
| (CITY, STATE, & ZIP CODE) | (CITY, STATE, & ZIP CODE) |
| (704) 953-2437 | (804) 222-2220 |
| AREA CODE + (TELEPHONE NUMBER) | (TELEPHONE NUMBER) |
| | (804) 236-5190 |
| FAX PHONE NUMBER | FAX PHONE NUMBER |
| deryl_smoak@swifttrans.com | Karen.Renkenberger@ICL-Ltd.com |
| EMAIL ADDRESS | EMAIL ADDRESS |